STATE OF VERMONT

SUPERIOR COURT — ENVIRONMENTAL DIVISION

| | | |
|---|---|---|
| In re Waitsfield Public Water System | } | Docket No. 33-2-10 Vtec |
| Act 250 Permit | } | (Appeal from Dist. 5 Env. Commission) |
| (Appeal from Permit #5W1511) | } | |

## Decision on the Merits

The Town of Waitsfield ("the Town") seeks to construct a public water supply system to serve a portion of the Town. The pending appeal was brought by Virginia Houston ("Appellant") from a decision by the District 5 Environmental Commission ("the District Commission") to issue an Act 250 Land Use Permit for the construction of the Town's public water supply well, supporting structures and equipment off of Long Road, above the Town Village. As a consequence of this Court's decision concerning pre-trial cross motions for summary judgment,[1] only two of the criteria applicable under the state land use law commonly known as Act 250 (10 V.S.A., Chapter 151) remain in dispute: criteria 3 (concerning the project's impact upon existing water supplies) and 5 (concerning the project's impact upon means of transportation). 10 V.S.A. § 6086(a)(3), (5). When the parties were unable to resolve their disputes concerning those two remaining Act 250 criteria, this matter proceeded to a trial.

The Court also conducted a site visit with the parties. While the Court did not consider the statements and observations made during the site visit as evidence, the site visit provided helpful context for the evidence that was presented at trial. Based upon the testimony, exhibits, and other evidence received at trial, the Court makes the following Findings of Fact and Conclusions of Law.

## Findings of Fact

### A. Overview of the Town's proposed Water Supply System.

1. The Town seeks to construct and operate a water supply well, pump house, supply lines, storage tank, and related support structures and equipment (hereinafter "proposed Water Supply System") to provide a safe and adequate supply of water to serve present and future

---

[1] See In re Waitsfield Public Water System Act 250 Permit, No. 33-2-10 Vtec (Vt. Super. Ct. Envtl. Div. Nov. 2, 2010) (Durkin, J.). At the request of the parties, the Court continued the trial while the parties attempted to resolve the remaining legal issues voluntarily.

homes and businesses in the Town's two village growth center districts, Irasville Village and the historic Waitsfield Village. See Town Act 250 Land Use Permit Application at 1, ¶ 6, a copy of which was admitted at trial as Exhibit 2.

2. The physical components of the proposed Water Supply System and the properties it is intended to serve are depicted on an overview map, admitted as Town Exhibit 6.

3. A portion of the proposed Water Supply System that is the subject of the Act 250 permit application currently before this Court is located on property that is or once was owned by Appellant and her abutting property owner, Jean Damon. A survey of these properties, including a depiction of the Water Supply System well, pump house, supply lines, and access road, was admitted at trial as Exhibit 6.

4. As shown on Exhibit 6, access to the Town well travels from a Town highway known as Long Road. The access way then travels along what was once understood to be a Town roadway, but which has since been determined to be a private roadway, known as Reed Road. Reed Road runs on both the Houston and Damon properties, along the boundary line that divides those properties. See Houston v. Town of Waitsfield, No. 147-3-08 Wncv (Vt. Super. Ct. Civil Div., Wash. Unit Nov. 30, 2010).

5. The Town initially installed a well near the end of Reed Road and close to the boundary between the Houston and Damon properties.[2] The well location is shown on Exhibit 6. The installation of this well confirmed the Town engineer's estimates that the well could supply potable water far in excess of that needed for the Town's proposed Water Supply System.

6. The Town then sought to acquire a portion of the Houston and Damon properties to maintain the supply well, pump house, and support equipment. In addition, the Town also sought to acquire an easement along Reed Road to improve the roadway, provide access, and run water and other lines to the other off-site components to the proposed Water Supply System.

7. Initially, both Appellant and Ms. Damon objected to the Town's plans. See In re Waitsfield Water Supply Source Permit, No. 134-7-08 Vtec (Vt. Super. Ct. Envtl. Div. July 14, 2009) (Durkin, J.). Ms. Damon subsequently chose to sell a portion of her property to the Town,

---

[2] At the time the decision was made to install this well, Town officials believed that Reed Road was a Town highway, owned in fee by the Town. Once the Washington Superior Court Civil Division concluded that Reed Road was a private roadway, owned in fee by Appellant and her abutter, the Town sought to acquire the necessary properties and easements through either voluntary negotiation or eminent domain. See Houston v. Town of Waitsfield, No. 206-4-11 Wncv (Vt. Super. Ct. Civil Div., Wash. Unit Nov. 4, 2010).

2

in fee, together with the easement over her land that the Town requested, subject to several conditions. Her warranty and easement deed were admitted at trial as Exhibit 4.

8. In crafting some of the conditions to Ms. Damon's conveyance to the Town, the parties anticipated improvements the Town intends to make to Reed Road, so that it may provide safe access for construction and maintenance vehicles to access the Town's well site. The Damon deed thus memorializes that the Town agrees to maintain the stone wall running along the northern edge of Reed Road, as well as to complete several other measures to improve Reed Road.

9. Appellant continues to express several concerns about the Town's plans. Her concerns are principally motivated by her own desire to develop a commercial water supply facility on her property, to maintain existing and proposed future wells on her property in the vicinity of the Town's well, and to reduce the impact that the Town's proposed Water Supply System could have upon her property and her access to her other adjoining properties. Appellant is also generally adverse to the Town acquiring a portion of her property in fee or an easement over that portion of her property over which Reed Road travels.

10. Appellant also expressed concerns about the Town's proposed project restricting her ability to remove timber from her adjoining lands. Appellant last logged her adjoining properties in the 1990s. Her expert testified that Appellant has no plans to log her adjoining lands now or in the foreseeable future. Nonetheless, the Town offered credible testimony that its proposed well, pump house, and water supply lines will not prohibit Appellant from accessing her adjoining lands through a private access way that branches off of Reed Road.

11. Reed Road ends near where the Town's well is located, which is about 125 feet from the western bank of Pine Brook. Reed Road used to pass over Pine Brook across a stone bridge, but portions of the stone bridge washed away long ago and the bridge has not been used for decades. Appellant admitted during cross-examination that the use of this stone bridge pre-dates her ownership of the property. Additionally, the remnants of the stone bridge are located on property owned by Ms. Damon and are outside the area that Ms. Damon conveyed to the Town.

12. Appellant has installed a gate at the entrance of the adjoining private access way that branches off of Reed Road. The location of the gate is shown on Exhibit 6.

3

13. When Appellant last contracted to have her adjoining property logged, the logging contractor built a wooden crossing over Pine Brook; it provided access to a log landing on the eastern side of Pine Brook. The log landing and wooden crossing are located about 200 to 300 feet to the south of the stone bridge remnants. The wooden crossing has since been destroyed by the floods accompanying Tropical Storm Irene.

14. The Town secured a Community Water System Source Permit ("Source Permit") for the project from the Water Supply Division of the Vermont Agency of Natural Resources Department of Environmental Conservation ("ANR Water Supply Division"). A copy of this Source Permit (Project #S-1689-09.1) was admitted as Exhibit 18. The permit authorizes a maximum water withdrawal rate of 186 gallons per minute. The credible testimony showed that, even at this maximum withdrawal rate, the operation of the Town well would not diminish Appellant's ability to draw water from one or more of her proposed wells, even at the maximum rates permitted by Appellant's Source Permit, referenced below at ¶¶ 25 and 26.

15. This Court dismissed appeals challenging the original Source Permit, as well as successor source permits that were issued when the term of the original Source Permit expired prior to the construction of the public water supply well and all of its support systems.[3]

16. On April 21, 2009, the Town filed an application for an Act 250 Land Use Permit for its proposed Water Supply System. The Town described the proposed project in its Act 250 application as serving the Town's two growth center districts in the villages of Irasville and Waitsfield and including "a drilled municipal supply well, approximately 27,500 linear feet of water mains, and a 400,000-gallon storage tank" off of Bushnell Road. Exhibit 2 at 1, ¶ 6. The proposed Water Supply System will also service users who wish to connect along the transmission route. Id.

17. The District Commission completed its evidentiary hearings and deliberations and, on February 5, 2010, issued its Findings of Fact, Conclusions of Law and Order, together with Land Use Permit #5W1511.

18. Appellant's appeal is the only remaining challenge to the District Commission's determinations granting the Town an Act 250 Land Use Permit. With her appeal, Appellant only challenges a portion of the proposed Water Supply System; namely, that portion proposed

---

[3] See In re Waitsfield Water Supply Source Permit, No. 134-7-08 Vtec (Vt. Envtl. Ct. July 14, 2009) (Durkin, J.); In re Waitsfield Water Supply Permit, No. 253-12-09 Vtec (Vt. Envtl. Ct. Feb.10, 2010) (Durkin, J.); In re Waitsfield Source Permit, No. 128-8-11 Vtec (Vt. Envtl. Ct. Nov. 16, 2011) (Durkin, J.).

to occur on lands now or formerly belonging to her and Ms. Damon. Thus, Appellant's current appeal only challenges the District Commission's positive findings under Act 250 criteria 3 (concerning the project's impact upon existing water supplies) and 5 (concerning the project's impact upon means of transportation). 10 V.S.A. § 6086(a)(3), (5).

**B. Appellant's property, her current use, and planned future uses.**

19. Appellant owns several parcels of land in the area near the proposed Water Supply System, totaling approximately 1,500± acres. There are currently no residential, commercial, or industrial structures on these properties, although several cellar holes on the properties evidence prior residences that are no longer standing. Reed Road provides access to a portion of Appellant's properties, and the properties also enjoy about 1,600± feet of road frontage.

20. Appellant desires to develop portions of her properties in the future, but she has not completed any of those plans and has not obtained the necessary permits to complete and operate any of her proposed plans. Her future plans include possible residential developments or a horse farm on the opposite side of Pine Brook from the current terminus of Reed Road, future logging activities, and a water supply well for a possible commercial water bottling operation.

21. If Appellant were to pursue the residential, horse farm, or other developments that she is considering, she anticipates completing them on the eastern side of Pine Brook. Appellant believes that the best access to these future developments will be over Reed Road and by rebuilding the former stone bridge at its original site. Appellant further believes that the Town's proposed project will prohibit her from reasonable use of this access. Appellant's assertions in this regard are not credible; we specifically conclude that the Town's proposed project will not restrict Appellant's use of Reed Road, up until the isolation zone for the Town water supply well. The credible testimony convinced us that Appellant may also be able to receive authority to travel into the Town's well isolation zone for occasional uses (such as logging and other seasonal uses), and that Reed Road, up to the Town's proposed well isolation zone, allows Appellant to develop other access ways to her properties for more consistent use.

22. Reed Road has served for decades as an access way to Appellant's adjoining property and the adjoining property now or formerly owned by Ms. Damon. It is deceptive to refer to Reed Road as a "road," as it is little more than a trail that appears difficult to travel except with a four-wheel-drive vehicle. Appellant has performed some maintenance work on Reed Road,

5

including culverting and ditch clearing, but much work is needed to make Reed Road passable for even occasional truck use.

23. In the 1990s, Appellant developed a private access way off of Reed Road in order to conduct logging activities. This private access way, discussed above in ¶¶ 10–13, can be entered through a gate, located near the Town well. This access way once traveled over the wooden crossing that was installed by Appellant's loggers and that crossed Pine Brook about 200 to 300 feet south of the remnants of the older stone bridge.

24. The Town's well isolation zone overlaps the entrance way to the private access way, near where Appellant has installed a gate. The isolation zone for Appellant's own well, noted below in ¶ 26, also overlaps the entrance to this private access way. If Appellant desired a future access for regular traffic, the terrain on the southern bank of Reed Road, just above the isolation zone for the Town's well, would allow such a cut. The Town has offered to relocate Appellant's gated access in this fashion, but Appellant has rejected the Town's offer.

25. Appellant installed a water supply well[4] on her property, south of where the Town's well is now located, subject to an ANR Water Supply Division Source Permit. This well currently consists of a borehole and outlet pipe for water overflow. The well is known as "Houston Well #2" and is shown on Exhibit 6. Appellant does not currently operate this as a well to supply water to any residential or commercial facility, has not yet constructed any such facility, and does not yet have the permits necessary to operate such a facility.

26. Appellant's Source Permit provides for a 200-foot isolation zone around Houston Well #2 which overlaps the 125-foot isolation zone for the Town's water supply well. See Exhibit 6.

27. One of Appellant's possible future proposals is to develop her well to supply water for a commercial water bottling operation. The volume of water Appellant desires to draw for this bottling operation would require Appellant to install an electrically driven pump at the well, which she has yet to do.

28. Appellant suggests that her operation would involve water being trucked from her well site, that these trucks would use Reed Road to access her well, and that the trucks would transport water from the well to an off-site bottling facility. Appellant does not yet have the facilities, permits, or contracts for such an operation, including those needed to deliver the well water to the trucks outside of her own well isolation zone.

---

[4] A previously-drilled well has been capped and is not in use.

### C. Impact upon existing water supplies (10 V.S.A. § 6086(a)(3)).

29.   Appellant provided no evidence that any of her wells currently serve as a water supply for an existing development.

30.   The Town's expert credibly testified that the aquifer that both the Town's well and Houston Well #2 tap is recharged with groundwater in such a significant amount that the operation of the Town's well will not impact Appellant's ability to draw water from one or more of her wells, even at the maximum withdrawal rate allowed by her Source Permit. Such a water draw would require Appellant to install an electrically driven pump at her well, whether the Town well existed or not. The water pressure at ground level from the underground aquifer is such that water currently flows at a rate of about 160 gallons per minute, without the aid of a pump from both the Town's well and Houston Well #2.

31.   The Town intends to provide electrical service and construct a pump house near its well, so that it may provide a consistent supply of water. The pump house will be constructed on a concrete pad, with wooden walls and a wooden roof. Next to the pump house will be two parking spaces, which will be used by Town staff to visit the site to maintain the well, pump, and support equipment. The Town offered credible testimony that regular maintenance will require no more than two round-trip vehicle trips per week.

32.   Chlorine will be stored in secure containers within the pump house; the chlorine will be injected into the water lines, after the pump, at regulated levels.

33.   We did not find credible Appellant's concerns that chlorine could possibly escape its container and spill outside of the pump house, or back flow through the pump and into the underground aquifer, especially in a quantity sufficient to contaminate the aquifer. We also did not find credible Appellant's concerns that the construction and operation of the well and support equipment and structures, including the pump house and parking spaces, could be a source of contamination to the aquifer.

### D. Impact upon means of transportation (10 V.S.A. § 6086(a)(5)).

34.   Once all construction is complete, the operation of the Town's proposed Water Supply System will cause little to no additional traffic on public highways. As noted above, the Town provided credible testimony that maintenance requirements at the well site will add no more than two round trips of traffic per week. Appellant offered no contradictory testimony.

35. Appellant offered no testimony suggesting that the Town's proposed project will "cause unreasonable congestion or unsafe conditions" on area highways, as prohibited by 10 V.S.A. § 6086(a)(5).

36. Appellant's concerns appeared premised, instead, upon a fear that the Town's operation of its well will restrict or prohibit her continued access to her properties in general and her use of Reed Road in particular. We find no support for either concern in the credible evidence presented at trial. The improvements to Reed Road that the Town plans in connection with this project will actually enhance the ability of Appellant and others to use Reed Road for access. Moreover, the Town has explicitly represented that its use of Reed Road will not inhibit Appellant or Ms. Damon's use of the road. In its current condition, Reed Road is not easily used, for any purpose, by anything other than four-wheel-drive vehicles and walkers with sturdy boots.

37. The Town's proposed project does not inhibit Appellant's ability to access her adjoining properties, given that Appellant's properties have in excess of 1,600 feet of road frontage and that there are varying points off of Reed Road at which Appellant could develop other means of access. Appellant's own expert testified that the more beneficial access point to areas east of Pine Brook, at least for logging purposes, is by way of Appellant's private access way and through redevelopment of the wooden crossing over Pine Brook, some 200 to 300 feet south of the former stone bridge.

### Conclusions of Law

Large scale developments in Vermont are required to obtain a state land use permit. 10 V.S.A. § 6081 ("No person shall . . . commence construction on a . . . development [as defined in 10 V.S.A. § 6001(3)(A)] without a[n Act 250] permit."). It is undisputed that the Town's proposed Water Supply System constitutes such a development and therefore requires an Act 250 permit, in addition to other applicable permits from the ANR Water Supply Division. When the District Commission rendered its positive Findings of Fact, Conclusions of Law and Order on February 5, 2010 in favor of the Town's proposed project, it concluded that the proposed Water Supply System conformed to all applicable Act 250 criteria. By filing a timely appeal of the District Commission's determinations, Appellant conferred jurisdiction upon this Court to hear all legal issues and relevant facts preserved for our review by Appellant's Statement of Questions. Now that only Appellant's Questions 3 (questioning conformance with

8

Act 250 criterion 3) and 4 (questioning conformance with Act 250 criterion 5) remain from Appellant's Statement of Questions,[5] we turn to those legal issues.

### A. Impact upon existing water supplies (10 V.S.A. § 6086(a)(3)).

Before the granting of any Act 250 permit application, the applicable district commission, or this Court on appeal, must conclude that the proposed development "[w]ill not cause an unreasonable burden on an existing water supply, if one is to be utilized." 10 V.S.A. § 6086(a)(3). This specific criterion has been described as protecting against a proposed project's impact upon the ability of existing wells to supply sufficient water to meet the demand of existing development; potential impacts upon the quality of the existing water sources have been deemed outside the purview of criterion 3 and within the domain of other Act 250 criteria. See In re Pion Sand and Gravel Pit, No. 245-12-09, slip op. at 11, 12 (Vt. Super. Ct. Envtl. Div. July 2, 2010) (Durkin, J.) ("Criterion 3 does not govern possible contamination of existing water supplies. Rather, criterion 3 is concerned with 'impacts on the ability to meet demand of neighboring wells or water sources if those other wells or water sources share the same basic source of water.'" (quoting Re: MBL Assocs., No. 4C0948-EB (Altered), Findings of Fact, Conclusions of Law, and Order, at 28 (Vt. Envtl. Bd. May 2, 1995))). Thus, Criterion 3 is solely concerned with "whether a proposed project 'impacts on the ability to meet demand of neighboring wells or water sources.'" Id. at 12 (quoting Re: Nile and Julie Duppstadt, No. 4C1013 (Corrected)-EB, Findings of Fact, Conclusions of Law, and Order at 2 (Vt. Envtl. Bd. Oct. 30, 1998)).

This precedent reduces our discussion here. The Town has made a sufficient showing, not credibly contradicted by Appellant, that its proposed project will not cause an impact against which criterion 3 seeks to protect. In fact, the Town presented credible evidence that there are no area wells providing water to an existing development that the Town's proposed project will impact, and Appellant presented no evidence to contradict this assertion. We therefore conclude that the Town's proposed Water Supply System is in conformance with Act 250 criterion 3.

Appellant has expressed concerns that the Town's project, if allowed, will impact the quality of the water she hopes to draw from the shared aquifer for her future projects. Putting

---

[5] See In re Waitsfield Public Water System Act 250 Permit, No. 33-2-10 Vtec (Vt. Super. Ct. Envtl. Div. Nov. 2, 2010) (Durkin, J.).

aside the undisputed fact that Appellant's proposed water supply development does not yet exist, and solely for the sake of providing analysis on an issue Appellant sincerely presented at trial, we note two deficiencies in Appellant's argument. First, Appellant's concerns go to alleged impacts on the quality and not quantity of the water. We are cautioned by the former Environmental Board that criterion 3 does not address quality impacts. See Re: MBL Assocs., No. 4C0948-EB (Altered), Findings of Fact, Conclusions of Law, and Order, at 28. Second, even if quality impacts were the domain of criterion 3, we find Appellant's concerns speculative at best, and not sufficient for this Court to conclude that the Town's proposed project is likely to adversely impact the quality of the water that is drawn from this shared aquifer.

### B. Impact upon means of transportation (10 V.S.A. § 6086(a)(5)).

Act 250 also protects against a proposed large scale development causing "unreasonable congestion or unsafe conditions with respect to use of the highways, waterways, railways, airports and airways, and other means of transportation existing or proposed." 10 V.S.A. § 6086(a)(5).

Our review of this criterion is similarly succinct, since Appellant offered no credible evidence that the Town's proposed project will cause "unreasonable congestion or unsafe conditions" on any means of transportation, either currently existing or specifically proposed. We first address the absence of a sufficient showing on Appellant's part, since an opponent to a proposed large scale development carries the burden of proof under criterion 5 to show that the proposed development will cause "an unreasonable or adverse effect." 10 V.S.A. § 6088(b). Without the presentation of any credible evidence, Appellant has failed to meet both her initial burden of production as well as her ultimate burden of persuasion.

The only evidence relating to the proposed development's impact upon highways or other means of transportation was presented by the Town, and it convinced us that there will be no such impacts due to the minimal additional traffic that the proposed project will generate. We therefore conclude that the Town's proposed Water Supply System conforms with criterion 5.

As noted in our Findings above, at ¶¶ 36 and 37, Appellant expressed sincere, but ultimately misplaced and unsubstantiated, concerns that the Town's proposed development will restrict or prohibit the continued access to her properties in general and the use of Reed Road in particular. We find no support for either concern in the credible evidence presented at

trial. In addition, we note that Reed Road is not a highway or other means of transportation open to the general public. Further, we note that the Town's planned improvements to Reed Road in connection with this project will actually enhance the ability of Appellant and others to use Reed Road for access; the Town has explicitly represented that its use of Reed Road will not inhibit Appellant's nor Ms. Damon's use of Reed Road. The only impact upon Reed Road will be improvement to Appellant's ability to use that private roadway. There will be no "unreasonable congestion or unsafe conditions" caused by this project, either on Reed Road or on any means of transportation open to the general public.

## Conclusion

For the reasons more fully discussed above, we conclude that the Town's proposed Water Supply System conforms to Act 250 Criteria 3 (concerning the project's impact upon existing water supplies) and 5 (concerning the project's impact upon means of transportation). 10 V.S.A. § 6086(a)(3), (5). We therefore enter judgment in favor of the Town on Appellant's Question 3 and 4.

Since the District 5 Environmental Commission issued Act 250 Permit #5W1511 on February 5, 2010 premised upon positive findings under criterion 3, 5 and all other applicable criteria, we hereby **AFFIRM** the issuance of Act 250 Permit #5W1511, with the provision that any timelines accruing as a consequence of Permit #5W1511 shall be reset to run from the date that this Decision on the Merits becomes final.

A Judgment Order accompanies this Decision. This concludes the current proceedings before this Court.

Done at Burlington, Vermont this 11th day of July 2012.

_____
Thomas S. Durkin, Judge

11